

hg/svw/bm: USAO#2021R00415

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.** GLR 23cr 304 |
| | : | |
| **v.** | : | **(Conspiracy To Commit Money Laundering,** |
| | : | **18 U.S.C. § 1956(h); Money Laundering To** |
| **YAHYA SOWE,** | : | **Promote Unlawful Activity, 18 U.S.C.** |
| **a/k/a "CASH,"** | : | **§ 1956(a)(1)(A)(i); Money Laundering To** |
| **VICTOR KILLEN,** | : | **Conceal Unlawful Activity, 18 U.S.C.** |
| **a/k/a "CHERRY,"** | : | **§ 1956(a)(1)(B)(i); Forfeiture, 18 U.S.C.** |
| **AREAL EL-LOVIETA HARRIS,** | : | **§ 982(a)(1), 21 U.S.C. § 853(p))** |
| | : | |
| **Defendants.** | : | |
| | : | |
| | : | |
| | : | |

USDC- BALTIMORE
'23 AUG 31 PM3:06

...oOo...

## INDICTMENT

## COUNT ONE – CONSPIRACY TO COMMIT MONEY LAUNDERING

The Grand Jury for the District of Maryland charges:

## INTRODUCTION

At times material to this Indictment:

1.     **Defendants YAHYA SOWE, a/k/a "CASH," ("SOWE")** and **VICTOR KILLEN, a/k/a "CHERRY," ("KILLEN")** were foreign nationals living in Montgomery County, Maryland.

2.     **Defendant AREAL EL-LOVIETA HARRIS ("HARRIS")** was a resident of Anne Arundel County, Maryland.

3.     GEDEON AGBEYOME, a/k/a "PAPA KWAM," ("AGBEYOME"), was a foreign national living in Montgomery County, Maryland.

1

4.      The Victim Trust was established to remedy environmental issues at a manufacturing facility.

5.      Identity Theft Victim #1 and Identity Theft Victim #2 were real persons living in Colorado.

6.      Capital One Bank ("CO"), Citibank, N.A. ("Citi"), PNC Bank ("PNC"), M&T Bank Corporation ("M&T"), J.P. Morgan Chase, N.A. ("JPM"), SunTrust Bank and Truist Bank (collectively "Truist"), Wells Fargo Bank ("WF"), and Woodforest Bank ("Woodforest") were financial institutions as defined in 18 U.S.C. § 20, and had physical branches, ATMs, teller windows, and employees.  All of these entities are hereinafter collectively referred to as the "Financial Institutions."

7.      The Financial Institutions maintained records concerning financial transactions in their accounts, including but not limited to records about the individuals controlling the accounts, and in some instances, surveillance video and/or images, and information about the identification documents used to open accounts.

8.      Financial institutions throughout the United States used a nine-digit number called a routing number along with a bank account number to determine the particular financial institution and account that should receive funds from a wire transfer.  Similarly, financial institutions placed the routing number and account number on checks so a bank receiving a check deposit could draw on the funds and account from which the check was issued.

**THE CONSPIRACY**

9.      Beginning at least in or around January 2019, and continuing through on or about the date of this Indictment, in the District of Maryland, and elsewhere,

**YAHYA SOWE,**
**a/k/a "CASH,"**
**VICTOR KILLEN,**
**a/k/a "CHERRY," and**
**AREAL EL-LOVIETA HARRIS,**

the defendants herein, did knowingly combine, conspire, agree, and have a tacit understanding with each other, and other persons known and unknown to the grand jury, to commit an offense against the United States, namely,

        a.      to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is, wire fraud, in violation of 18 U.S.C. § 1343, with the intent to promote the carrying on of such specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knowing that the property involved in the financial transactions represented the proceeds of some form of some form of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(A)(i); and

        b.      to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is, wire fraud, in violation of 18 U.S.C. § 1343, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and knowing that the property

3

involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

## PURPOSE OF THE CONSPIRACY

10.     It was a purpose of the conspiracy for the **DEFENDANTS** and their co-conspirators to unlawfully enrich themselves and others by (a) depositing and transferring the proceeds of schemes to defraud into bank accounts that they controlled, bank accounts controlled by co-conspirators, and accounts controlled by third persons; (b) promoting the wire fraud scheme through financial transactions; (c) concealing the nature, location, source, ownership, and control of the wire fraud proceeds; and (d) diverting and spending fraud proceeds for the personal use and benefit of the **DEFENDANTS** and their co-conspirators.

## MANNER AND MEANS

11.     It was part of the conspiracy that the **DEFENDANTS** created and used limited liability companies and other business entities (collectively "Shell Entities") that did not have physical operations, business premises, engage in legitimate business activities, earn gross revenues, incur cost of goods sold, incur administrative expenses associated with business operations, report wages for employees to the State of Maryland, or have significant numbers of employees.

12.     It was further part of the conspiracy that the **DEFENDANTS** and their co-conspirators opened and controlled bank accounts on which the Shell Entities were listed as the account holders, but one of the **DEFENDANTS** had signature authority over the bank accounts.

4

13.     It was further part of the conspiracy that on certain accounts, a member of the conspiracy used aliases and stolen identities as the individual with signature authority for the bank account registered to one of the Shell Entities.

14.     It was further part of the conspiracy that the **DEFENDANTS** registered and used bank accounts listed in their own names and those of their co-conspirators.

15.     It was further part of the conspiracy that co-conspirator AGBEYOME obtained and used false, forged, and counterfeited identification documents, including documents bearing the names of Identity Theft Victim #1 and Identity Theft Victim #2.

16.     It was further part of the conspiracy that the **DEFENDANTS** and their co-conspirator AGBEYOME controlled the following Shell Entities:

       a.   YS Estate and Properties, which **SOWE** controlled;

       b.   Victor's Trucking and Pull LLC, which **KILLEN** controlled;

       c.   Vieta Collection, which **HARRIS** controlled;

       d.   The Justin Company LLC, which AGBEYOME controlled; and

       e.   [Last Name of Identity Theft Victim #2] Company LLC, which AGBEYOME controlled.

17.     It was further part of the conspiracy that the **DEFENDANTS** and their co-conspirators used the bank accounts that they controlled to receive money originating with the wire fraud victims, including the Victim Trust, and intended to pay legitimate debts and other financial obligations.

18.     It was further part of the conspiracy that the **DEFENDANTS** and their co-conspirators engaged in financial transactions with proceeds obtained from wire fraud schemes in

which victims such as the Victim Trust were deceived into sending money based on false and fraudulent pretenses, such as being provided with false bank account information for legitimate vendor payments and false wire transfer information for legitimate transactions.

19.     It was further part of the conspiracy that the **DEFENDANTS** and their co-conspirators caused fraud proceeds to flow through the following bank accounts (ending with the four numbers shown):  CO 8993, Citi 7105, JPM 8673, JPM 1531, M&T 9895, M&T 8530, PNC 4286, PNC 9581, Truist 5211, WF 3335, WF 7361, WF 7387, and Woodforest 4396.

20.     It was further part of the conspiracy that the **DEFENDANTS** and their co-conspirators promoted the wire fraud scheme by causing additional financial transactions using the wire fraud proceeds deposited into the Shell Entity bank accounts.

21.     It was further part of the conspiracy that the **DEFENDANTS** and their co-conspirators concealed and disguised the wire fraud proceeds by causing additional financial transactions with the wire fraud proceeds.

22.     It was further part of the conspiracy that the **DEFENDANTS** and their co-conspirators caused wire fraud proceeds to be routed through additional intermediate bank accounts in transactions with no legitimate business purpose.

23.     It was further part of the conspiracy that the **DEFENDANTS** and their co-conspirators caused wire fraud proceeds to be credited to additional bank accounts registered to the Shell Entities and controlled by the **DEFENDANTS**.

24.     It was further part of the conspiracy that the **DEFENDANTS** and their co-conspirators provided false and fraudulent information to financial institutions in an effort to

convince the financial institutions to release holds on wire fraud proceeds in the bank accounts controlled by the **DEFENDANTS** and their co-conspirators.

25. It was further part of the conspiracy that the **DEFENDANTS** and their co-conspirators concealed and disguised the nature, location, source, ownership, and control of the proceeds by withdrawing and transferring money from the Shell Entities' bank accounts in the form of cash withdrawals, the purchase of cashier's checks, debit card transactions, and other financial transactions.

26. It was further part of the conspiracy that the **DEFENDANTS** and their co-conspirators communicated through encrypted online communication applications, including WhatsApp.

27. It was further part of the conspiracy that the **DEFENDANTS** and their co-conspirators obtained a portion of the money deposited into the Shell Entities' bank accounts controlled by the **DEFENDANTS** and their co-conspirators.

28. It was further part of the conspiracy that the **DEFENDANTS** and their co-conspirators engaged in international financial transactions and caused wire fraud proceeds to be sent outside the United States.

29. It was further part of the conspiracy that the **DEFENDANTS** and their co-conspirators collectively conducted and attempted to conduct financial transactions involving more than $2 million, knowing that the transactions constituted proceeds from unlawful activity.

18 U.S.C. § 1956(h)

## COUNTS TWO THROUGH FIFTEEN – MONEY LAUNDERING

The Grand Jury for the District of Maryland further charges that:

1.      Paragraphs 1 – 8 and 11 – 29 of Count One of this Indictment are incorporated here by reference.

2.      On or about the dates listed below, in the District of Maryland and elsewhere, the **DEFENDANTS** listed below did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit the transactions described below, which involved the proceeds of a specified unlawful activity, that is wire fraud, in violation of 18 U.S.C. § 1343,

      a.      with the intent to promote the carrying on of such specified unlawful activity, and that while conducting and attempting to conduct such financial transaction knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(A)(i); and

      b.      knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction, knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i):

| COUNT | DATE | DEFENDANTS | DESCRIPTION |
|-------|------|------------|-------------|
| 2 | July 13, 2021 | **KILLEN** | Transfer of $451,000.99 via a check purchased with funds from PNC 4286, and deposited into Woodforest 4396, an account in the name of Victor's Trucking and Pull LLC |
| 3 | July 13, 2021 | **HARRIS** | Transfer of $367,000.99 from PNC 4286 to WF 3335, an account in the name of Vieta Collection |

| 4 | July 15, 2021 | **HARRIS** | Deposit of $100,000 check from PNC 4286 to Truist 5211, an account in the name of Vieta Collection |
|---|---|---|---|
| 5 | July 23, 2021 | **HARRIS** | Transfer of $150,000 from WF 3335 to M&T 9895, an account in the name of Vieta Collection |
| 6 | July 27, 2021 | **HARRIS** | Debit of $20,000 from Truist 5211, an account in the name of Vieta Collection |
| 7 | July 28, 2021 | **KILLEN** | Transfer of $100,000 via a check purchased with funds from WF 7361, and deposited into Woodforest 4396, an account in the name of Victor's Trucking and Pull LLC |
| 8 | July 28, 2021 | **HARRIS KILLEN** | Transfer of $60,000 via a check purchased with funds from Truist 5211, and deposited into Citi 4494, an account in the name of Victor's Trucking and Pull LLC |
| 9 | Aug. 2, 2021 | **HARRIS** | Wire transfer of $100,000 from M&T 9895 to an account at a bank in China |
| 10 | Aug. 9, 2021 | **KILLEN SOWE** | Deposit of $260,000 M&T 8530 check into Citi 4494, an account in the name of Victor's Trucking and Pull LLC |
| 11 | Aug. 9, 2021 | **SOWE** | Split-deposit of $99,000 M&T 8530 check into accounts in the name of **SOWE** |
| 12 | Aug. 17, 2021 | **KILLEN SOWE** | Transfer of $50,000 via a check purchased with funds from Citi 4494, and deposited into PNC 9581, an account in the name of [Last Name of Identity Theft Victim #2] Company LLC |
| 13 | August 17, 2021 | **KILLEN SOWE** | Transfer of $75,000 via a check purchased with funds from Citi 4494, and partially deposited into CO 8993, an account in the name of YS Estate and Properties |
| 14 | Sept. 8, 2021 | **HARRIS SOWE** | Transfer of $100,000 via a check purchased with funds from WF 3335, and deposited into Citi 7105, an account in the name of YS Estate and Properties |
| 15 | Sept. 9, 2021 | **HARRIS SOWE** | Transfer of $65,000 via a check purchased with funds from WF 3335, and split-deposited into JPM 1531 and JPM 8673, which were accounts in the name of **SOWE** |

18 U.S.C. § 1956(a)(1)(A)(i)
18 U.S.C. § 1956(a)(1)(B)(i)
18 U.S.C. § 2

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further finds that:

1.      Pursuant to Fed. R. Crim. P. 32.2, notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 982(a)(1) and (b)(1) and 21 U.S.C. § 853(p), in the event of the defendant's conviction under Counts One through Fifteen of this Indictment.

### Money Laundering Forfeiture

2.      Upon conviction of any the offenses alleged in Counts One through Fifteen of this Indictment, the defendants,

**YAHYA SOWE,**
**a/k/a "CASH,"**
**VICTOR KILLEN,**
**a/k/a "CHERRY,"**
**AREAL EL-LOVIETA HARRIS,**

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offenses, or any property traceable to such property.

3.      The property to be forfeited includes, but is not limited to, approximately $200,089.05 seized from a Citibank account ending in 7105.

### Substitute Assets

4.      If, as a result of any act or omission of the defendant, any of the property described above as being subject to forfeiture:

      a.      cannot be located upon the exercise of due diligence;

      b.      has been transferred or sold to, or deposited with, a third person;

      c.      has been placed beyond the jurisdiction of the Court;

       d.      has been substantially diminished in value; or

       e.      has been commingled with other property which cannot be divided

                without difficulty,

the United States shall be entitled to forfeiture of substitute property up to the value of the

forfeitable property described above pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C

§ 982(b)(1).


18 U.S.C. § 982(a)(1) and (b)(1)
21 U.S.C. § 853(p)

Erek L. Barron /lug
EREK L. BARRON
United States Attorney


A TRUE BILL :

SIGNATURE REDACTED

Foreperson

Date: 8/31/23


11